*In re* WILSON.

1. CRIMINAL LAW—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—PAROLE—CONDITIONS.

The conditions of parole of a criminal sexual psychopathic person should bear some relation to the main object of the statute under which such person was committed for treatment and prevent sexual deviates from preying upon society and the conditions must largely depend upon the case history of the parolee, the progress he has made while confined, as well as the society he would come in contact with while on parole (CL 1948, § 780.506).

2. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—PAROLE—CONDITIONS—ABUSE OF DISCRETION.

Defendant was properly found guilty as a parole violator and returned to custody of department of mental health, where it appears that he had returned to his home in Detroit and it was a condition of his parole that he not go to Detroit where his wife was then living, the original commitment having developed out of a charge of taking indecent liberties with his 8-year-old daughter without committing or intending to commit the crime of rape upon her, since the condition imposed was not an abuse of medical determination upon the part of the medical superintendent (CL 1948, § 780.506).

Habeas corpus with ancillary writ of certiorari by Woodrow Wilson to obtain his release from State prison where, under jurisdiction of the department of mental health, he is incarcerated as a criminal sexual psychopathic person. Submitted November 5, 1957. (Calendar No. 47,539.) Writ dismissed December 24, 1957.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 28 Am Jur, Insane and Other Incompetent Persons §§ 36, 40.
[2] Statutes relating to sexual psychopaths. 24 ALR2d 350.

*Woodrow Wilson, in propria persona.*

*Thomas M. Kavanagh,* Attorney General, *Samuel J. Torina,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, for the people.

SHARPE, J. Petitioner, Woodrow Wilson, in his application for writ of habeas corpus and ancillary writ of certiorari claims that he is illegally imprisoned and restrained in the State prison at Jackson, Michigan. We issued our writ to inquire into the matter. In response to the ancillary writ of certiorari we have the records pertaining to Wilson's detention.

It appears that in September, 1951, petitioner was charged with taking indecent liberties with his 8-year-old daughter without committing or intending to commit the crime of rape upon her. In October, 1951, the prosecuting attorney of Wayne county filed a petition for a determination of whether petitioner was a criminal sexual psychopathic person. A commission of psychiatrists was appointed. After an examination the commission determined that petitioner was a criminal sexual psychopathic person. Upon such a finding petitioner was committed to the State hospital commission to be confined and treated in an appropriate State institution until he should be fully recovered or otherwise legally discharged.

Petitioner was received at the Ionia State Hospital on December 22, 1951, as a criminal sexual psychopathic person. On April 15, 1952, petitioner was transferred to the psychiatric division of the State prison at Jackson, Michigan, by the department of mental health. In 1955 petitioner was returned to the Ionia State Hospital. Petitioner was paroled from the Ionia State Hospital on June 4, 1956, and on September 24, 1956, the department of mental health issued an order to the sheriff of Kent county to de-

tain petitioner as a parole violator. Petitioner was returned to the Ionia State Hospital on October 2, 1956, as a parole violator.

A part of the condition for parole was that petitioner was to live in Grand Rapids and not go to Detroit where his wife was then living. Under date of September 18, 1956, a letter was addressed to petitioner at his address at 223 Franklin, East, Grand Rapids, Michigan, from Dr. Robertson, medical superintendent of Ionia State Hospital, as follows:

"We have carefully considered your request for permission to share your home with your wife and children. It is our feeling that such a plan is unwise and would lead to problems such as existed before you were admitted to this hospital. Because of this, we are advising you to move back into the Grand Rapids Y.M.C.A. By living in the Y.M.C.A., you will be able to make contributions to your family's welfare, inasmuch as it will be less expensive at the Y.M.C.A. than an apartment.

"It is expected that you will do as instructed. If you fail to abide by our instructions you will be considered as a parole violator."

Under date of April 30, 1957, in a routine report on Woodrow Wilson, petitioner, Dr. George H. Cook, psychiatrist, said:

"This patient was transferred from the Ionia State hospital to SMP (Southern Michigan Prison) on 4–12–57 as a parole violator. He had been out on parole a few months when he was arrested on assault and battery charges. The patient had left Grand Rapids and gone on to Detroit to rejoin his wife. And, while with her, he had assaulted her on several occasions. This patient had trouble with his wife prior to his original arrest as a CSP, and he had been warned previously about returning to his wife and he was paroled to Grand Rapids to keep him away from her. The patient is considerably confused regarding circumstances and says that he was

never warned about returning to his wife, but he was warned to stay away from Detroit, as Detroit was said to be to(o) hot for him to make a parole there. *This patient did not violate his parole so far as sexual conduct was concerned but did violate his parole by being arrested for assault and battery.* This man continues to show a good attitude toward authority and to be fully cooperative insofar as he is able at the present time." (Emphasis supplied.)

. The controlling question presented to us for our consideration is: Was the condition imposed by Dr. Robertson, medical superintendent of Ionia State Hospital, namely, that petitioner must not share his home with his wife and children, reasonable under the facts and circumstances of this case?

The statute authorizing the State hospital commission to release a prisoner reads as follows:

· "The State hospital commission shall have the right to release such person upon parole to such persons and under such conditions as his condition, in the judgment of the State hospital commission, merits." (CL 1948, § 780.506 [Stat Ann 1954 Rev § 28.967(6)].)

In *In re Kader,* 334 Mich 339, we had occasion to construe the statute with relation to the power to release a prisoner on parole. We there said (p 343):

"We agree with petitioner's statement, 'that conditions of parole under this particular public act should bear some relation to the main object of the act which is to prevent sexual deviates preying upon society.' If a person exhibits abnormal sexual behavior while on parole, he has breached an implied condition of his parole. What constitutes such behavior is primarily a matter for medical determination.

"If Kader had been merely convicted of simple larceny, this fact of itself might be an insufficient basis for rehospitalization. However, where the circumstances of the theft for which he was convicted,

plus his previous conviction for indecency indicate abnormal sexual behavior and a medical decision follows, we cannot say that the director's determination was an abuse of his discretion."

The conditions under which parole is offered must largely depend upon the case history of the parolee, the progress he has made while confined, as well as the society he would come in contact with while on parole. Petitioner's record prior to being incarcerated in the case at bar is not one to be proud of. He was arrested and served time in Mississippi and Texas. He served 2 years for assault upon a female. He has been arrested approximately 15 or 16 times. His work when not in prison was that of common labor. His record also shows that upon numerous occasions he has had family quarrels. He is somewhat immature. Undoubtedly it was the intention of Dr. Robertson of the Ionia State Hospital to make petitioner's adjustment to society as easy as possible and not to confront the petitioner's children with living in the same home with petitioner.

Under such circumstances, we cannot say that the conditions exacted were an abuse of medical determination upon the part of Dr. Robertson. It is an admitted fact that petitioner violated his parole when he returned to Detroit.

No issue is presented in this petition as to petitioner's confinement at the State prison at Jackson, Michigan.

The petition for writ of habeas corpus is dismissed.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.